Eastern District of Kentucky
**F I L E D**

JUL 3 1 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
*Electronically Filed*

| | |
|---|---|
| TRESINA PRIMM, individually and as Administrator of the Estate of Stanley Primm<br><br>Plaintiff<br><br>v.<br><br>CLARK COUNTY, KENTUCKY<br><br>Serve: Chris Pace<br>    County Judge/Executive<br>    34 South Main<br>    Winchester, Kentucky 40391<br><br>FRANK DOYLE<br><br>Serve: Clark County Detention Center<br>    30 Wall Street<br>    Winchester, Kentucky 40391<br><br>JUSTIN CROCKETT<br><br>Serve: Clark County Detention Center<br>    30 Wall Street<br>    Winchester, Kentucky 40391<br><br>MELISSA MONTGOMERY<br><br>Serve: Clark County Detention Center<br>    30 Wall Street<br>    Winchester, Kentucky 40391<br><br>SETH NEWSOME<br><br>Serve: Clark County Detention Center<br>    30 Wall Street<br>    Winchester, Kentucky 40391 | Case No. 5:20-CV-336-DCR |

JASON HOPPER )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )
)
MARTIEZ MULLINS )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )
)
DAWN WIESEN )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )
)
HAROLD LITTLE )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )
)
ADVANCED CORRECTIONAL )
HEALTHCARE, INC. )
)
Serve: C T Corporation System )
      306 W Main Street, Suite 512 )
      Frankfort, Kentucky 40601 )
)
DR. EVERSON )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )
)
KIM CARLSON )
)
Serve: Clark County Detention Center )
      30 Wall Street )
      Winchester, Kentucky 40391 )

2

KIM CAVASOS )
 )
Serve: Clark County Detention Center )
    30 Wall Street )
    Winchester, Kentucky 40391 )

***********

# COMPLAINT

## Parties and Jurisdiction

1. Tresina Primm is a resident of Jefferson County, Kentucky. As Stanley Primm's wife, the Jefferson District Court appointed Tresina Administrator of Stanley Primm's Estate on July 2, 2020. The court's order is attached as Exhibit A.

2. When he died, Stanley Primm was incarcerated by the Clark County Detention Center (the Jail) in Clark County, Kentucky.

3. At all times relevant to this Complaint, Defendant Clark County, Kentucky was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all officers, employees, and independent contractors at the Jail and was responsible for the employment, training, supervision, discipline, and conduct of all officers, employees, and independent contractors at the Jail.

4. At all times relevant to this Complaint, Defendant Frank Doyle was the Clark County Jailer. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail, and was responsible for the employment, training, supervision, discipline,

and conduct of all employees and independent contractors at the Jail. He is sued in his individual capacity.

5. At all times relevant to this Complaint, Defendant Justin Crockett was a supervisor at the Jail. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail, and was responsible for the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail. He is sued in his individual capacity.

6. At all times relevant to this Complaint, Defendant Melissa Montgomery was a supervisor at the Jail. Shee was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail, and was responsible for the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail. She was further responsible for the health and welfare of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. She is sued in her individual capacity.

7. At all times relevant to this Complaint, Defendant Seth Newsome was a supervisor at the Jail. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all employees and independent contractors at

the Jail, and was responsible for the employment, training, supervision, discipline, and conduct of all employees and independent contractors at the Jail. He is sued in his individual capacity.

8. At all times relevant to this Complaint, Defendant Jason Hopper was a deputy jailer at the Jail. He was responsible for the health and welfare of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. He is sued in his individual capacity.

9. At all times relevant to this Complaint, Defendant Martiez Mullins was a deputy jailer at the Jail. He was responsible for the health and welfare of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. He is sued in his individual capacity.

10. At all times relevant to this Complaint, Defendant Dawn Wiesen was a deputy jailer at the Jail. She was responsible for the health and welfare of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. She is sued in her individual capacity.

11. At all times relevant to this Complaint, Defendant Harold Little was a deputy jailer at the Jail. He was responsible for the health and welfare of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. He is sued in his individual capacity.

12. At all times relevant to this Complaint, Advanced Correctional Healthcare, Inc. was an Illinois corporation licensed to do business in Kentucky. ACH contracted with the Jail to provide medical treatment to people incarcerated

there. Pursuant to that contract, ACH was responsible for hiring competent medical providers, implementing and enforcing appropriate policies, procedures, protocols, customs, and practices for the care of Jail inmates, and training, supervising, and disciplining those medical providers to ensure their competence. ACH was ultimately responsible for the medical treatment provided by its employees or agents. ACH was responsible for assigning employees, agents, or independent contractors to review medical records or otherwise maintain its employees, agents, or independent contractors' awareness of the medical condition of all people incarcerated at the Jail.

13. At all times relevant to this Complaint, Defendant Dr. Everson was the medical director at the Jail. He was responsible for the health and welfare of all people incarcerated at the Jail, addressing the serious medical needs of all people incarcerated at the Jail, implementing and enforcing appropriate policies, procedures, protocols, customs, and practices for the care of the Jail's inmates, and the training and supervision of all other medical staff at the Jail. He was responsible for reviewing medical records or otherwise maintaining their awareness of the medical condition of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. He is sued in his individual capacity.

14. At all times relevant to this Complaint, Defendant Kim Carlson was a nurse at the Jail. She was responsible for the health and welfare of all people incarcerated at the Jail, and addressing the serious medical needs of all people

incarcerated at the Jail. Carlson was responsible for reviewing medical records or otherwise maintaining her awareness of the medical condition of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. She is sued in her individual capacity.

15. At all times relevant to this Complaint, Defendant Kim Cavasos was a nurse at the Jail. She was responsible for the health and welfare of all people incarcerated at the Jail, and addressing the serious medical needs of all people incarcerated at the Jail. Cavasos was responsible for reviewing medical records or otherwise maintaining her awareness of the medical condition of all people incarcerated at the Jail, and personally and directly participated in Primm's mistreatment. She is sued in her individual capacity.

16. Defendants Everson, Carlson, and Cavasos are referred to as "Medical Defendants."

17. This Court has subject matter jurisdiction over this action and venue is proper. Plaintiff's claims involve an amount more than the jurisdictional limit of this Court and a substantial amount of the conduct giving rise to this matter occurred in this judicial District.

### Facts

18. On July 17, 2019, Stanley Primm was incarcerated at the Jail.

19. On that day, he filled out a medical slip complaining of severe headaches that affected his vision.

20. He continued complaining about the headaches and, on July 20, filled out a medical slip asking for a blood pressure check. The blood pressure check indicated that his blood pressure was elevated.

21. On July 21, he filled out another medical slip because he was still in pain and having issues with his vision. He wrote that he believed "something is terribly wrong."

22. Medical Defendants were aware of Primm's medical slips and substantiated that his complaints were legitimate.

23. The individual Jail defendants were aware of Primm's medical slips.

24. On July 26, Primm was in so much pain that he could not stand. His blood pressure remained elevated. He had to be sent to the Clark Regional Medical Center Emergency Room.

25. The Medical Defendants and the individual Jail defendants knew Primm was sent to the hospital and why he was sent there.

26. On July 29, Jail staff found Primm unresponsive after he took a shower. His blood pressure was elevated. After regaining consciousness, he stated that he could not hear. Again, he was sent to the CRMC ER.

27. The Medical Defendants and the individual Jail defendants knew Primm was sent to the hospital and why he was sent there.

28. There is no evidence that Medical Defendants or the individual Jail defendants performed any observations of Primm on July 30 despite their knowledge of his condition.

29. On July 31, there is no evidence that Medical Defendants or the individual Jail defendants performed any observations of Primm until 2:45 p.m. despite their knowledge of his condition.

30. At 2:45, Primm told Little that he could not move.

31. At 4:30, Wiesen saw Primm fall.

32. Little and Wiesen told the other individual Jail defendants, Carlson, and Cavasos what they saw. However, none of them provided Primm medical attention or ensured that he received medical treatment despite their knowledge of his condition.

33. At 5:20, Primm refused blood pressure medication that Carlson attempted to give him for the second time that day. Primm also urinated on himself. Carlson advised Newsome of Primm's refusal, and Newsome told Hopper and Mullins. However, none of them provided Primm medical attention or ensured that he received medical treatment despite their knowledge of his condition.

34. Carlson alerted Everson to Primm's condition. Despite Primm's obvious medical distress, Everson told Carlson to continue monitoring Primm for worsening symptoms.

35. Primm's symptoms worsened. His blood pressure continued to elevate, his breathing became slow, and he sweated profusely, all of which Carlson and the individual Jail defendants knew.

36. However, no one obtained medical attention for Primm until 6:15, when he was completely unresponsive. Finally, at 6:25, EMS arrived and transported Primm to CRMC.

37. Primm fought for life overnight but was pronounced dead at 7:49 a.m. on August 1, 2019. The coroner identified the cause of death as hypertensive cardiovascular disease, but no autopsy was performed.

38. Neither Clark County, Doyle, Crockett, Mullins, Newsome, ACH, or Everson ("Training/Supervising Defendants") trained their subordinates to respond appropriately to serious medical conditions.

39. The individual defendants' misconduct reflected and was a consequence of their lack of training and/or supervision.

40. Training/Supervising Defendants knew how their subordinates reacted in situations involving serious medical conditions and intentionally chose not to intervene.

41. Through their actions and inactions, Training/Supervising Defendants, acquiesced in, endorsed, and ratified their subordinates' failure to treat obviously serious medical conditions.

42. The failure and refusal of Training/Supervising Defendants and their subordinates to identify and treat obviously serious medical conditions among the inmate population was so common and widespread as to amount to a practice, and therefore an unwritten policy, of the Jail.

43. Because of Defendants' conduct described above, Defendants severely injured Primm, for which Plaintiff is entitled to recover actual damages in an amount to be determined at trial.

### Count 1:
### Objective Unreasonableness
### 42 U.S.C. § 1983
### (All Individual Defendants)[1]

44. Defendants acted under color of law.

45. Defendants knew or should have known of the excessive risks to Primm's health or safety.

46. Despite that, Defendants failed to act with reasonable care to mitigate the risk to Primm.

47. Defendants' failure caused Primm's injuries.

48. Because of Defendants' actions, Primm was harmed, subjected to a significant risk of harm, or both.

49. In addition to compensatory damages, interest, expenses, and court costs, Tresina Primm is entitled to damages for the loss of her husband's love, society, support, and companionship, and the Estate is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

---

[1] Count 1 is pled based on a nonfrivolous argument for extending, modifying, or revising existing law, or for establishing new law. Fed. R. Civ. P. 11(b)(2); *See also, Love v. Franklin Cty.*, 2019 U.S. Dist. LEXIS 51190 (E.D. Ky. March 27, 2019).

## Count 2:
## Deliberate Indifference
## 42 U.S.C. § 1983
## (All Individual Defendants)

50. Defendants acted under color of law.

51. Primm had a serious medical need in that he had a condition that a licensed medical provider determined required treatment or a condition so obvious that even someone who is not a licensed medical provider would recognize required treatment.

52. Defendants knew that Primm had a serious medical need or strongly suspected facts showing a strong likelihood that Primm had a serious medical need but refused to confirm whether these facts were true.

53. Defendants consciously failed to take reasonable measures to provide or obtain treatment for Primm's serious medical need.

54. Because of Defendants' actions, Primm was harmed, subjected to a significant risk of harm, or both.

55. In addition to compensatory damages, interest, expenses, and court costs, Tresina Primm is entitled to damages for the loss of her husband's love, society, support, and companionship, and the Estate is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## Count 3:
## Eighth Amendment
### *Monell Liability*
### 42 U.S.C. § 1983
### (Clark County, Doyle & ACH)

56. Clark County's, Doyle's, and ACH's respective training programs were inadequate to train their employees and independent contractors to carry out their duties.

57. These Defendants failed to adequately train, supervise, or discipline their employees.

58. These Defendants' respective failures to adequately train, supervise, or discipline their employees or independent contractors amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the right to treatment for a serious medical need.

59. These Defendants' respective failures to adequately train, supervise, or discipline their employees or independent contractors proximately caused the violation of Primm's right to treatment for a serious medical need.

60. In addition to compensatory damages, interest, expenses, and court costs, Tresina Primm is entitled to damages for the loss of her husband's love, society, support, and companionship, and the Estate is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## Count 3:
## Negligence/Wrongful Death/Gross Negligence
## (All Individual Defendants)

61. It was Defendants' duty to exercise ordinary care for the safety of other persons, including Primm, to avoid foreseeable injuries.

62. Defendants knew or should have known Primm was at risk of injury.

63. Defendants' breach of their duty was a substantial factor in causing Primm's injuries and death.

64. Medical Defendants' treatment fell below the standard of care.

65. Medical Defendants' breach of the standard of care was a substantial factor in causing Primm's injuries.

66. Defendants' wanton, reckless, malicious, or oppressive conduct manifested an extreme indifference to the lives and safety of others, including Primm.

67. In addition to compensatory damages, interest, expenses, and court costs, Tresina Primm is entitled to damages for the loss of her husband's love, society, support, and companionship, and the Estate is entitled to punitive damages and an award of attorney fees in prosecuting this action.

## Request for Relief

Accordingly, Tresina Primm, as Administrator of the Estate of Stanley Primm request that the Court grant the following relief:

1. Judgment in their favor against Defendants and an award of actual damages for Primm's wanton and unnecessary pain and suffering preceding his

death, his loss of enjoyment of life, and for his Estate's loss of his ability to labor and earn money, and punitive damages, for Defendants' unlawful actions;

2. An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 1988;

3. Trial by jury; and

4. All other relief to which the Estate may be entitled.

Respectfully submitted,

/s/ Tresina Primm
Tresina Primm
3723 Willmar Avenue
Louisville, Kentucky 40218

*Tresina Primm* (signature)